Matter of Friedman (2025 NY Slip Op 01408)

Matter of Friedman

2025 NY Slip Op 01408

Decided on March 13, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 13, 2025

CV-23-0978
[*1]In the Matter of the Estate of Jack R. Friedman, Deceased. John C. Wirth Jr., as Executor of the Estate of Jack R. Friedman, Deceased, Appellant; Scott D. Gussin, Doing Business as Scott Daniel's Auction, Respondent.

Calendar Date:January 7, 2025

Before:Clark, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

John C. Wirth Jr., Rhinebeck, appellant pro se.
Scott D. Gussin, Stone Ridge, respondent pro se.

Powers, J.
Appeal from a decree of the Surrogate's Court of Ulster County (Sara McGinty, S.), entered April 18, 2023, which, in a proceeding pursuant to SCPA 2103, among other things, denied petitioner's objections to an accounting of a third-party auctioneer.
Jack R. Friedman (hereinafter decedent) died in May 2018 and petitioner was appointed as the executor of his estate. Petitioner entered into two separate contracts with respondent in connection with the handling of the personal property of the estate. Namely, petitioner contracted for the cleanout of decedent's home and, relevant to this proceeding, contracted for the sale of certain personal property by way of an auction to be organized by respondent (hereinafter the consignment contract). Under the terms of the consignment contract, respondent was provided the exclusive right to sell the property consigned and was granted the authority to "decide the auction at which the property will be [sold]." When executing the consignment contract on behalf of the estate, petitioner included a handwritten clause requiring notification of when and where the auction was to occur, although it was not signed by respondent after this clause was added. An online auction was subsequently held through a third-party website in November 2019. While respondent does not appear to have notified petitioner of the auction, he did send petitioner an inventory list, dated January 2020, detailing those items that had sold and for how much. Subsequently, in August 2020, petitioner requested a complete accounting of all sales and a detailing of the marketing efforts employed by respondent in preparation for the auction. Respondent provided petitioner with the information purportedly available to him at that time.
Based upon petitioner's belief that the information provided was inadequate, he filed the underlying petition pursuant to SCPA 2103 to discover property withheld and requesting further inquiry into the property consigned. In September 2022, Surrogate's Court ordered respondent to provide specific details as to the items consigned. Respondent explained that the remaining information requested was either not collected in the first instance or had been lost in the intervening time. Petitioner objected to these submissions and sought a supplemental accounting on the basis that respondent had not provided all the relevant information required under the September 2022 order. The court denied these objections in an April 2023 order, finding that respondent had satisfied the requirements of the September 2022 order with the submissions provided. Petitioner appeals the April 2023 order.[FN1]
A proceeding pursuant to SCPA 2103 is meant "to provide a vehicle through which the fiduciary can obtain information needed to determine the assets of the estate or the value thereof, as well as to effectuate a return of the property to the fiduciary" (Matter of Steinman, 183 AD3d 588, 589 [2d Dept 2020] [internal quotation marks, brackets and citation [*2]omitted]; see Matter of Smith, 160 AD3d 1256, 1258 [3d Dept 2018]). "A fiduciary petitioning under SCPA 2103 must show that someone is wrongfully holding property that belongs to the estate. The petitioner bears the initial burden of proving that the subject property is an asset of the estate," and, if successful in doing so, "[t]he burden then shifts to the respondent to demonstrate that the asset was properly disposed of" (Matter of Gacovino, 188 AD3d 1201, 1202 [2d Dept 2020] [internal quotation marks and citations omitted]). Surrogate's Court's determination in this regard will not be disturbed absent an abuse of discretion (see Matter of Smith, 160 AD3d at 1258; Dwyer v Valachovic, 137 AD3d 1369, 1373 [3d Dept 2016]).
It is uncontested that the parties contracted for the sale of the personal property of the estate by way of an auction organized by respondent and, in accordance therewith, certain property of the estate was consigned to respondent. As such, petitioner satisfied his initial burden of proving that the consigned property was an asset of the estate, and the burden shifted to respondent to demonstrate that he disposed of the property properly — i.e., in compliance with the consignment contract. Relevant here, the consignment contract granted respondent the exclusive right to sell the property of the estate by way of a public auction. Not only was respondent to decide which property would be sold but he was also able to divide property into separate lots or combine property into one lot at his own volition. The contract allowed petitioner to place "[r]easonable reserves . . . on important property" and specified what was to occur if the property was sold below reserve. Additionally, the contract specified that respondent did not guarantee the selling price and that any estimate provided by respondent was "opinion only and shall not be construed as any promise of selling price."
Pursuant to the September 2022 order, respondent was obligated to provide, among other things, a complete list of the property consigned and describing each item in detail; a complete accounting of the sales including the name and address of each purchaser, offering price, dates of sale, sale price, method of payment, relevant bank statements, auction sites utilized, description of items with specific lot numbers, bid history by lot number; a complete list of items not sold and describing those items in detail; and physical access to respondent's storage facility.
Respondent provided documentation to satisfy Surrogate's Court's directive as well as a detailed written response. As to the documentation, respondent provided a spreadsheet which included the inventory number assigned to each item consigned, the lot number assigned to each item for purposes of the auction, a brief description of the property, whether the property was sold or passed upon and, if sold, how much the property was sold for and whether it was returned or refused by the purchaser after [*3]sale. Respondent also supplied a printout of the webpage for each lot from the website utilized for the online auction. By doing so, respondent once again furnished the lot number, a brief description of the item and the sale price if sold as part of the auction, as well as the estimated value and a more detailed description of each item, which had not been provided elsewhere in the submissions. Respondent handwrote on these records the inventory number to allow the reader to match the other records provided, as well as whether the item had sold after auction and, if so, for how much. Respondent also wrote other relevant notes related to the item, including whether the item was combined with others and sold as a single lot. The written response detailed, among other things, that respondent does not independently retain the name and address of purchasers nor are receipts retained for sales made through the online auction site, and, relatedly, the payment method used by purchasers was no longer available due to the time that had elapsed. Respondent explained that he also did not retain a record of the opening price for each auction item, which, according to him, is dependent upon many factors at the time of the auction. Additionally, petitioner was responsible for placing reserve prices on the auction items he deemed important, which he did not do. Therefore, no items in the auction were sold with a reserve. Moreover, records of the bid history for each lot are not something customarily retained in the auction industry and, as a result, this information was also not available.
We do not find that Surrogate's Court abused its discretion in accepting this response as adequate (see generally Dwyer v Valachovic, 137 AD3d at 1373). While the records supplied by respondent are somewhat disorganized, these records allowed petitioner to identify each item by lot number and inventory number, as well as described the item and indicated whether it was sold and for how much. Furthermore, respondent explained why he did not provide the additional information required under the September 2022 order. Despite petitioner's conclusory assertion to the contrary, without any basis in the record we cannot assume that respondent was dishonest or untruthful in his explanations in this respect (see Matter of Rokeach, 101 AD3d 1022, 1025 [2d Dept 2012]). Based upon the information provided, respondent demonstrated that he disposed of certain property in accordance with the consignment contract, and, relatedly, petitioner was able to determine that other assets remained within respondent's possession and control and was able to effectuate the return of this property (see generally Matter of Smith, 160 AD3d at 1258; Matter of Rappaport, 66 AD3d 1032, 1033 [2d Dept 2009]).[FN2] We have reviewed petitioner's additional arguments and find them to be without merit.
Clark, J.P., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the decree is affirmed, with costs.[*4]

Footnotes

Footnote 1: As part of the order appealed from, Surrogate's Court also determined that additional fact-finding was necessary to conclude whether the storage costs requested by respondent were reasonable. Therefore, the court set the matter down for a hearing on this issue. That hearing was held while this appeal was pending, and we take judicial notice of the court's order on this issue (see generally Northacker v County of Ulster, 212 AD3d 86, 89 n 1 [3d Dept 2022]).

Footnote 2: Petitioner also presently claims that respondent's submissions were unclear as to what specific items of the estate's property remained with respondent and were placed in storage after the auction. Assuming, without deciding, that respondent's submissions are inadequate in this respect, the appropriate relief to remedy this deficiency in the record would be to remit for further fact-finding, thereby allowing respondent to supply additional documentation. Yet, this has already occurred in the context of respondent's request for storage costs. Surrogate's Court has independently remedied this apparent inadequacy in the record with its subsequent order denying respondent's request. As part of that order, the court indicated that petitioner was not able to identify whether specific items remained in storage with certainty until all items were assembled to be picked up. Based upon these developments, remittal for further fact-finding on this issue would not only be unnecessary but, also, futile as the court noted that the items have since been returned to petitioner.